v. England. Okay, Mr. Kemet. Good morning. Chris Kemet on behalf of Appellant Jermaine Smart. Viewed in the light most favorable to Mr. Smart, the summary judgment record shows that Defendant England handcuffed Mr. Smart and then sexually abused him while he was handcuffed. After Mr. Smart exercised his First Amendment rights, Yeah, the problem was there was a disciplinary tribunal that determined otherwise, right? And as I understand your argument, your argument is, first I'll tell you, I think the district court misread the Alabama regulation. And if your reading is right, then it seems to me that a prisoner has a free shot to allege sexual assault against a corrections officer and cannot be disciplined for it. And if they are disciplined for it, then they automatically have a First Amendment retaliation claim. Is that not right? I don't think that that's right, Your Honor. Why isn't it? Sure. Okay, so looking at the statute, so I think that the relevant portion of the statute is AR- In the regulation 454. 454, 5H2B, 5H2C. So these two subsections are in conversation with each other, obviously. So 5H2B says that you can issue disciplinary infraction when the incarcerated individual files an allegation that was determined by the I&I investigation to be false. And then the second part says, but you can't rely solely on the unfounded findings. So you would have to rely more than- Yeah, but unfounded is one of the determinations that you can make in the investigation stage. Falsity is not listed as a finding, is it, under the regs? So- Unfounded is the one that is most closely associated with falsity. Isn't that right? I disagree that it's most- Well, let me put it this way. Which one is more closely associated than that? No, I think it's more closely associated than the other, but I'd like to- Okay. I'd like to make two points in response to that, Your Honor. Okay. It's not- I would say that the way that the regulation is set up, or the way that the disciplinary forms are set up, there are four dispositions. Yeah. And unfounded is one of them. Yeah. And false is not. But 5H2B doesn't speak to dispositions, and it doesn't speak to unfounded. It speaks to false. And false and unfounded are critically different, both in a general sense, but also- Never going to be the determination? I mean, that's never going to- it's never going to be false. It's going to be- and even if it were, you couldn't discipline them just solely based on that. It's going to be unfounded. You'd still have to give them due process. You'd still have to give them a hearing, right? Yes, Your Honor. So there's two points in response to that. First, there is space for the INI investigator, Bynum in this instance, to make a determination that the allegation, that Mr. Smart's allegation, was false, that it was intentionally untrue. There's a space in the back of the form where you can write out what your findings are in the case, and particularly given that he was trained on these PREA regulations and that they make the ability to issue this disciplinary infraction- But you'd still have to check one of those dispositions, right? And the one he would have checked, even in the event that you write some comments on the back of the form saying that I think what he said is false, what he checked, what he would check, and in fact did check, is unfounded, right? That's the one you would check. You would, but section D says that you have to make a finding of falseness, and the fact that B uses the word false, it doesn't say disposition, which is what unfounded is on the form. Unfounded is a type of disposition. It says false, and the fact that they use false in the first instance and unfounded in the second instance shows that whoever drafted the statute intends for these to mean different things, and they do mean different things. And I think if you look at the record, you can see why that's really important in this case, because the INI investigator determined that this allegation was- So the INI investigator, but your interpretation could, right on the back of the form, after checking unfounded, that the allegations are false, and then the prison can issue a disciplinary infraction just based solely on that without a hearing? Yes, I think that they could- They could do that? They could sanction them without a hearing? Oh, no, sorry, sorry, sorry. I misunderstood your question. No, they could not. They'd have to have a hearing, right? Yes, they would still have to have a hearing. And if they have a hearing, then the discipline that would be imposed at the end of it wouldn't be solely based on a finding of unfounded, would it? I think in that instance, no, where there's a specific finding of false- Just what happened here? Respectfully, I disagree with that, Your Honor, and here's why. So false means intentionally untrue, and there's nothing that shows- What Mr. Smart said was either untrue or intentionally untrue. So Mr. Smart made an allegation that he was touched in a particular way by a child in England. The INS investigator chose to investigate this as a violation of a particular Alabama criminal code thing, 141131, which has both an actus reus and a mens rea. There's no real dispute here that the actus reus is satisfied. Mr. Smart was touched in a particular place over his clothing. That satisfies the actus reus. So the real dispute here is the mens rea. Mr. Smart made no specific mens rea allegations. The mens rea is that he has to have acted for purposes of sexual gratification. So England obviously knows that this is what's being investigated because in his testimony, he doesn't say that his pat-down is proper. All he says is he patted him down and he did it for the purposes of his job and not for sexual gratification, which is trying to rebut the mens rea that's both under 141131 and also under its analogous Alabama regulatory statute, which I think is 4543L5. It's a little bit more than this going on. As I understand it, the inmate is alleging that in the conduct of the pat-down, the officer engaged in touchings that would not be consistent with a standard pat-down. And the officer said, not true. I did a standard pat-down, and another two officers said that's all they saw as well. Isn't that right? Actually, I disagree with your reading of the record, Your Honor. So what Mr. Smart says is that his genitalia was fondled. The defendant, England—so there was a lingering touch of his genitalia. Defendant England snickered after he told him to stop. So if you look at the record, I believe that there are six witnesses who speak to the INI investigators. Well, let's talk about the ones that the hearing officer credits. Because if he discredits the others, it doesn't matter what they say. He doesn't believe them. Let's talk about the ones—what do the ones he believes say? Sure. So there are four officers who testify. One of them is not able to see it, right? I'm not sure if one is unable to see it. I think all four speak to what they see. I thought he was up, like upstairs. He didn't actually see the pat-down. Okay, my recollection, and maybe I'm incorrect about it, but I thought that he was upstairs, but he says that he did see it. I assume that it's an open barracks, but perhaps I'm incorrect on that. All right, so here are what the officers said. England concedes that he checked Mr. Smart's genital area and his groin area. So he's not denying the kind of access— He says he didn't linger, though he was just doing a standard pat-down. He didn't say that. All he says is that he was doing it for his job and not for purposes of sexual gratification. He doesn't rebut the actual factual allegation in any way, and neither did the three other officers. So it's actually a little bit suspicious the way that the three other officers testify. They all say that there was a pat-down, but they don't say it was a proper pat-down. They don't say that Mr. Smart's genitalia wasn't touched in a particular place or in a particular way. All they say in the record—and the record has to be read in the light most favorable to Mr. Smart because it's part of the evidentiary record— is that Sergeant England patted down Mr. Smart. So Cameron Smith says that he did a search of Mr. Smart, and he says that Mr. Smart protested in real time, makes this excited utterance protesting that. Guthrie and Jones, who are the other two officers, simply say that there was a pat-down. It's undisputed that there was a pat-down. Mr. Smart says there was a pat-down. They don't say anything about the pat-down being proper. And critically, even Sergeant England doesn't say anything about the pat-down being proper. All he defends is his intention. So he doesn't say that Mr. Smart's allegation is wrong in any way except for the fact that he didn't act for purposes of sexual gratification. So all of the evidence shows that Mr. Smart's basic allegation, even if it was deemed to be unfounded because there was this mens rea determination that 141131 wasn't violated because— It would also be false. Well, you had two inmates. Well, first of all, so the investigator didn't credit at all what the inmate said, only what the officer said. Is that correct? And you have two inmates who testified that they witnessed Officer England touch Mr. Smart's penis. And then you have a conclusion that it's unfounded because what you have before the investigator is that Mr. Smart was touched in his private part, but what you don't know is whether or not the officer received any gratification from it. So that justifies unfounded, which is very different from saying that Mr. Smart lied. Yes, which doesn't support the finding that it's untrue or that it's intentionally untrue, which is what false means, or under 512, which has an additional requirement. 512 is the lying regulation, which says that in addition to being false, it has to be made for the purposes of deceiving a prison official or separately to prejudice somebody. So there's no evidence of any of those things. But I think it's important that you have— But there is—Counsel, let me ask you this. You said there's no—you said at one point, and I wrote it down, that there is no finding that it was—that it didn't happen, that it was untrue. But unfounded in the regs means investigated and determined not to have occurred. So not to have occurred is the same thing as untrue. The allegations are untrue. They didn't—what is alleged did not occur. So that is a finding that it wasn't true. Your Honor, because they investigated this as a violation of a particular criminal code section, if they found that he didn't have the mens rea, they would still reach an unfounded finding without actually disagreeing with any of his factual allegations. They would have—how could they—how could you say they wouldn't have to disagree with any of his factual allegations? He says, I was sexually assaulted, right? And the finding of unfounded says that was found not to have occurred. I think that it's important to be—to be very precise about what he says in terms of determining whether it's untrue. And what he says is that his genitals were fondled during the pat-down search. Fondled— And, and, and, Counsel, you need to add what he said the officer said or did at that time. Yes, absolutely, Your Honor. And that Mr. Smart then protested and that the officer then snickered. That's the— Okay. That's the— Everything, though, that he says, right, occurred, the investigator claims—finds not to have occurred. I'm sorry. Yeah, everything that would constitute misconduct against the officer that the prisoner alleged, the officer investigating determines not to have occurred. I don't think that's— Well, isn't that what unfounded means? Unfounded means it was investigated and found not to have occurred. Yes, they interpreted what Mr. Smart alleged to be a violation of 141131, which has both the actus reus and the mens rea. So he decided that didn't happen. Even if you disagree with this, the prohibition that's in 5H2C is clear. It says you can't do this based—you can't issue a disciplinary report based solely on the unfounded— And it doesn't. I mean, they have a hearing, and they hear testimony at the hearing. And the sanction is based at least in part on that. So it's not based solely on a finding of it being unfounded. I disagree in two respects with you, Your Honor. So first, the disciplinary report is issued when Sergeant England gives Mr. Smart something that's entitled disciplinary report at the top. It's section 512. It says it's for lying. It says the basis for it. It's an unfounded basis. Even if you don't credit that, and I can see that you are skeptical about that— What's the final thing that's issued? The final what? What's the final thing issued by the disciplinary tribunal called? The findings? No, what's the final thing called? It's called a disciplinary report, isn't it? It's the final disciplinary report. That's what it's referring to. Yes. So even if we—so even if that is correct, Your Honor, I still think that we land in exactly the same place. So if we look at document 414, page 3, which is the final report that you're saying, they ask the hearing officer to say, what is the factual predicate for your finding of guilt? And he says, clear as can be, and again, summary judgment, evidence readily the most favorable to us, in this case, the allegation against Sergeant England is unfounded. Full stop. That is the predicate for the finding, which is the exact predicate that they can't— Based on, in part, on the testimony, right, of those who testified before the disciplinary tribunal, right? Based on a credibility determination where none of the inmates' testimony was credited and only the officers. Also on a record where there's no debate that a pat-down happened. Absolutely, Your Honor. But what the regulation says is you can't do it on an unfounded finding. And just like Sergeant England said, I'm doing it on an unfounded finding, Baker says he's doing it— Can't do it solely on an unfounded finding. And I think that if you look at line 17 of 41-4-3— Mr. Kimmett, you— There is no other basis. It is solely— You've gone way over. Let's hear from the State, and you've saved all your rebuttal time. Thank you, Your Honor. Mr. Boudry. Counselor, would you agree that these regulations, the Alabama regulation, provides heightened protection for individuals in State custody who allege, whether it happened or not, that they've been sexually assaulted? Yes, Your Honor. I think the purpose of Regulation 454, the sexual assault policy, is to provide protection for the inmates, and so we want the inmates to provide— It's probably to implement the Prison Rate Production Act, isn't it? I'm sorry? It's probably to implement the Prison Rate Production Act, the federal law, the spending law. Yes, Your Honor, precisely. And so I do want to address that and the interpretation of that regulation, 454, and how it works with the prison disciplinary proceedings, because I think that's at the heart of Mr. Smart's argument. And, of course, as we explained in our brief, we don't think it matters for purposes of whether O'Brien applies or Qualified Immunity, whether there was a violation of the regs. But I don't think the court has to address that because I think Mr. Smart's claim fails on its own terms because he misinterprets those regulations. And so 454, the sexual abuse and harassment policy, Mr. Smart is right that it says an inmate should not be punished solely for filing an allegation that is determined to be unfounded. Unfounded, of course, means that the allegations were determined not to have occurred. And that makes sense because, again, we want the inmates to bring forth good-faith allegations. And so if I say, you know, I think I saw an inmate so-and-so be sexually abused, but then they investigated, they determined, you know, I didn't have a good line of sight, I didn't understand what I was seeing, whatever, I should not be punished because I made a good-faith allegation. But 454 also says an inmate can be punished for filing a false allegation. And so for that, we go to the disciplinary rule, which is 403. And lying is not a crime. Sorry. And I think Hill and O'Brien also speak to the investigator providing clear written findings to support the conclusion of lying. Which document in the record are you directing this Court to, to find that the investigator satisfied that requirement? The factual findings from the disciplinary hearing, Your Honor, by Captain Baker, who was the hearing officer – Lieutenant Baker, excuse me. He was the hearing officer. He heard the testimony from Sergeant England. He reviewed the factual findings of the investigator, Investigator Bynum. And then he heard from the three witnesses that Mr. Smart called. And the hearing officer determined that that testimony was not credible, that he instead credited the testimony of Sergeant England and the factual findings of the investigation. And then he wrote down his factual findings. And, of course, they were sparse, but they didn't need to be. So you think what he, the investigator, submitted satisfies O'Brien's written findings requirement? Yes, Your Honor. Hill says – O'Brien says you just have to have some evidence to support the findings and – And the some evidence in this case is correction officers saying it didn't happen that way. When you have at least two other inmates in custody testifying against officers saying that happened? Yes, Your Honor. Those are classic questions of fact for the hearing officer to determine. And so he was there. He heard the testimony of the inmates. He also heard the testimony of Sergeant England. He reviewed the investigation report from Investigator Bynum, who had interviewed other officers as well. And then based on that evidence, he made his factual finding. And under O'Brien, we are bound by that. But I want to make clear that – Any time you have a swearing contest, you're going to have witnesses on either side. And O'Brien requires that the determination be based on some evidence. That means that the fact finder credited some of the witnesses and discredited some of the others. That's classic, right? But in an environment where there is a power dynamic and a credibility determination, again, where only the officer's testimony was credited as opposed to the inmate's. But that is true also in O'Brien, Your Honor. I mean, in O'Brien, the inmate testified. He said that his allegation – But O'Brien, if I remember correctly, was an inmate who mouthed off or made some disrespectful comments to an officer. Here, you have someone who alleges that they were sexually assaulted. You have an inmate who was asked to strip down so he's in his underwear. The officer admits that he touched him as part of a search. And the question is, what was the officer's motivation, any gratification that he might have received? And that, if I understand correctly, is the reason why initially the complaint was determined to be unfounded.  Your Honor, I have two responses. One is that the procedure is the exact same. Of course, the facts are different, but the procedural posture is the exact same as O'Brien. The second point is I would disagree with Mr. Smart's characterization that the only reason that Investigator Bynum found the allegation to be unfounded was because of the lack of sexual gratification. The mens rea requirement. Why do you disagree with that? Well, if you look at the investigation, he finds that the pat-down itself was proper, that it was proper under the procedures. And he bases that on the evidence provided by the other correctional officers. And if you read Smart's charge, it does not describe a proper pat-down. Absolutely correct. I also want to... I mean, if the finding is that it was a proper pat-down, there's no way to square that with Smart's charge, is there? Correct. That's correct. Unless there are more questions about the administrative regulations, I can quickly hit on... Well, if your reading of the administrative regulations is right, then the case is controlled by O'Brien, isn't it? Yes, sir. We would also argue that the case is controlled by O'Brien even if our... I understand that, but it's a lot easier, isn't it, if your reading of the regulation is right? And if the officer's written factual findings satisfy what O'Brien requires to, correct? Yes, sir. We would submit that it certainly does. It satisfies the procedural due process requirements. Indeed, Mr. Smart doesn't contest that he got the process that he was due at the disciplinary hearing. He does not raise a due process challenge in this case. But instead he argues that essentially penalizing people who allege that they were sexually assaulted contributes to the statistics that Mr. Smart identifies in his brief of so many people filing these complaints and yet so few people actually receiving any kind of remedy. Essentially chilling the speech or chilling any future allegations made because if these allegations are found to be unfounded, then what Mr. Smart's situation also previews is that then a step further will be taken to be found that the person lied and then they will be punished for what they initially did was to complain about a sexual assault, allegedly. A couple of responses. One is that the statistics that Mr. Smart points to in his brief is not record evidence. That's not what this case is about. The DOJ document that he cites is not evidence. That's clear on page one of that document itself. The second point is that, and these are factual questions for the hearing officer to determine. He heard the evidence. He determines not only that the allegations by Mr. Smart were false, that they did not occur, but also that he intentionally brought those allegations knowing that they were false. That's the definition of lying within 403. That's what he was punished for, not for making a good faith allegation of sexual assault. Even though there were two other people who testified that they witnessed the touching as well. So those people lied, arguably, as well? I think it's fair to say that the hearing officer did not credit their testimony and instead found other testimony more credible. And that was his prerogative. Because if he hadn't, he would have had to discredit the corrections officers and found that they were lying. I mean, the hearing officer is faced with a situation. There's testimony on both sides. Somebody's lying. Or somebody viewed the situation differently. I mean, on one end, too, it was Mr. Smart and Officer England. And so Mr., arguably, Officer England could have thought he was doing it properly but didn't. And Mr. Smart interpreted and felt a different way. So, again, I think it speaks to the importance of distinguishing between unfounded and lying. He was found guilty of lying. He was not punished solely because the allegation was determined to be unfounded. But because the hearing officer could have been a good, in other words, it could have been a good faith determination to make the charge. It was unfounded. But the hearing officer could have said, you know, I don't think that's what happened either. But I don't think he intentionally was falsely charging the officer with the intent to harm his reputation. I don't think that he did that. He could have made that finding, but that's not what he found. He found that he intentionally did do it. That's correct. And that's the distinction between 454's prohibition on punishing an inmate solely because They don't have jurisdiction to reconsider that, to reweigh that evidence or to go behind that judgment of the disciplinary tribunal, do they? That's correct. Those are factual findings that were the disciplinary hearings to make. But, again, O'Brien requires at least that those factual findings be clear enough and clearly articulated to support the ultimate finding. Yes, Your Honor. It requires some evidence. Yes. And the due process requires the writing down of the factual findings. Okay. Unless there are further questions, we ask that you affirm the judgment. Thank you. Okay. Thank you. Mr. Kimmick? I should have asked. Judge Carnes, do you have any questions? No, I'm fine. Okay. Mr. Kimmick, you've saved three minutes. Thank you, Your Honor. Counsel, actually, I do have a question for you. Yes, sir. In the VH2C, what does the word solo mean? Only. All right. So if you can consider that the allegations were unfounded, it's that you've got to have something else, correct? Yes, sir. Okay. So the hearing officer had something else, did he not? Brian's testimony. The hearing officer, I don't believe, had anything else, Your Honor. He didn't have the report in front of him? I have two responses to that, Your Honor. The first is that the hearing officer, Lieutenant Baker, told us what he did because he had to write it down on the form, and he says the factual finding that I make, he makes a solitary factual finding. You can see it plain as day in the record. It's that the allegation was unfounded. He doesn't make additional factual findings about falseness. He doesn't make factual findings. Doesn't he make a finding that he believed the sworn testimony of England? He does, Your Honor. Well, isn't that different from the finding of unfounded? Isn't that in addition to it? No, because the only relevant part of Sergeant England's testimony is his statement that the I&I allegation is unfounded. He says three sentences. His testimony is three written sentences. Sworn testimony from England, right? Yes. So that's something in addition to a finding that it was unfounded. If the sworn testimony, the only relevant part of the sworn testimony is the I&I allegation is unfounded, then you just go around and you can't just give the I&I founding, like, a new name and have it not be proven. You're saying that that's all England testified to? Yes. It's the only thing? Yes. There was a pat-down. There was an allegation. I&I determined it was unfounded. So the only part of the testimony is found that it was, he says, unfounded. He uses the same exact words. Which is that it's found not to have occurred. That's what it means. That is what it means, which doesn't mean that it's false, which doesn't mean that it's a lie. So the idea that if you read 5H2C to mean that if there is an underlying body of evidence that a finding can't be based solely, that the hearing result can't be based solely on an unfounded finding, even if they say it's based solely on the unfounded finding, you would just eliminate 5H2C from having any content whatsoever because there's always going to be an underlying report. So clearly that's not what the people who drafted the regs meant in the first place. So in this instance where the defendants are essentially confessing over and over again on written forms in the record that they did it for the one reason that they couldn't do it, then it's a plain violation of 454. That means that O'Brien has no application to this case. The normal rules of summary judgment should apply. The decision of the district court should be reversed if there are no further questions. Can you speak just briefly to your argument about discretionary versus ministerial and why the defendants didn't even satisfy that first step? Yes, absolutely, Your Honor. So I think a good articulation of this is actually Chief Judge Pryor's decision in Estate of Cummings versus Davenport. And what it says is for the second prong of the discretionary authority inquiry, you view the type of action that's involved at the minimum level of generality. The problem is Cummings is a case where the warden is making an end-of-life decision for an inmate and there's nothing in the law whatsoever that gives him that authority. Nothing. Whereas here, this is about the administration of prison discipline. All these officers have the authority to administer prison discipline. Whether they get it right or not is a different question. That's the level of generality for their job function. That's super well established. Respectfully, Your Honor, what you wrote in that decision is to get to the proper level of generality, you have to be at the minimum level of generality possible to strip out the constitutional taint. And then you further explained in a very helpful way that that could be the unconstitutional intent, the unconstitutional degree, et cetera. So here, the unconstitutional taint is the intent to retaliate. So you strip out the intent to retaliate and you say, could these officers have issued an unfounded finding or a disciplinary hearing under 454 based solely on an unfounded finding if they didn't have an unconstitutional purpose? And the answer is no because 454 doesn't turn on that unconstitutional finding at all. The officers don't have the power. Is it not true that the administration of prison discipline is a job-related duty for these officials? It does, Your Honor. Yes, and there's nothing that gave the warden in Cummings the authority, nothing. They gave him the authority to make end-of-life decisions. Respectfully, Your Honor, that's the first prong of the two-prong test for discretionary authority. And in the second prong, you have to ask if the means they used to pursue that job-related task were within their power to utilize. And officers aren't given carte blanche to discipline anybody for any reason. They have to do so consistent with the rules and regulations of the prison. If you're reading of the regs wrong and the state's reading is right, then you don't have an argument. Yes, I think if we lose the reg issue that we do lose under O'Brien, yes. Okay. All right. Thank you. Thank you, Your Honor. We're in recess until tomorrow. Thank you, Your Honor.